IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FREDERIC RUSSELL MANCE, JR., | § | Civil Action No. |
| TRACEY AMBEAU HANSON, ANDREW | § | |
| HANSON, and CITIZENS COMMITTEE FOR | § | **COMPLAINT** |
| THE RIGHT TO KEEP AND BEAR ARMS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC HOLDER, Attorney General of the | § | |
| United States, and B. TODD JONES, Director, | § | |
| Bureau of Alcohol, Tobacco, Firearms & | § | |
| Explosives, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

**COME NOW** the Plaintiffs, Frederic Russell Mance, Jr., Tracey Ambeau Hanson,

Andrew Hanson, and Citizens Committee for the Right to Keep and Bear Arms, by and through

the undersigned counsel, and complain of the Defendants as follows:

## INTRODUCTION

The Supreme Court has recognized that the handgun is the quintessential self-defense

arm in the United States, the possession of which is a fundamental right guaranteed by the

Second Amendment.  Federal law, however, defeats the formation of a national market for

handguns.  Americans are free to purchase rifles and shotguns across state lines, so long as those

transactions comply with the laws of the seller's and purchaser's states.  But under federal law,

no American may lawfully purchase a handgun outside his or her state of residence.  This

prohibition plainly reduces competition, raises prices, and limits consumers' choices in the

-1-

handgun market.

Ostensibly, the federal interstate handgun prohibition serves an anti-circumvention purpose, securing the federal interest in having firearm consumers follow the laws of their home states. But several states do not object to—and even welcome—interstate handgun sales. Federal law with respect to interstate rifle and shotgun sales provides a ready example of a more carefully tailored alternative, prohibiting sales that violate state law—and permitting those that do not. There is no need to criminalize the entire interstate handgun market. Plaintiffs, firearm retailers, and consumers thus seek declaratory and injunctive relief against that practice.

## THE PARTIES

1.      Plaintiff Frederic Russell Mance, Jr., is a citizen of the United States and a resident of Texas. Mance holds a Federal Firearms License ("FFL"), pursuant to which he retails handguns in Arlington, Texas.

2.      Plaintiff Tracey Ambeau Hanson is a citizen of the United States and a resident of the District of Columbia. She is married to Plaintiff Andrew Hanson.

3.      Plaintiff Andrew Hanson is a citizen of the United States and a resident of the District of Columbia. He is married to Plaintiff Tracey Ambeau Hanson.

4.      Plaintiff Citizens Committee for the Right to Keep and Bear Arms ("the Committee") is a non-profit corporation organized under Section 501(c)(4) of the Internal Revenue Code, dedicated to promoting the benefits of the right to bear arms. The Committee brings this action on behalf of its members and supporters, who sell and purchase firearms throughout the United States.

5.      Defendant Eric H. Holder, Jr. is sued in his capacity as the Attorney General of the United States. As Attorney General, Holder is responsible for executing and administering

laws, customs, practices, and policies of the United States, and is presently enforcing the laws, customs, practices, and policies complained of in this action.

6.      Defendant B. Todd Jones is sued in his capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE").  As Director of BATFE, Jones is responsible for executing and administering laws, customs, practices, and policies of the United States, and is presently enforcing the laws, customs, practices, and policies complained of in this action.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

8.      Venue lies in this Court pursuant to 28 U.S.C. § 1391, as this is the District and Division in which a substantial part of the events or omissions giving rise to the claim occurred and are occurring, and in which Plaintiff Mance resides.

## STATEMENT OF FACTS

*i.      The Federal Regulatory Regime*

9.      Title 18 U.S.C. § 922(a)(3) forbids individuals from transporting into, or receiving in their state of residence, any firearm acquired outside that state since December 16, 1968, except for firearms acquired by bequest or intestate succession, or pursuant to a purchase from a federally-licensed dealer that complies with 18 U.S.C. § 922(b)(3).  For purposes of this provision, the District of Columbia is a "state."  18 U.S.C. § 921(a)(2).

10.      Title 18 U.S.C. § 922(b)(3) and 27 CFR § 478.99 bar licensed federal firearms dealers from selling firearms to individuals who do not reside within the state in which a dealer's place of business is located.

11.     Section 922(b)(3)'s prohibition contains an exemption, allowing a dealer to sell rifles and shotguns to residents of states where the dealer does not maintain a place of business,

> if the transferee meets in person with the transferor to accomplish the transfer, and the sale, delivery, and receipt fully comply with the legal conditions of sale in both such States (and any licensed manufacturer, importer or dealer shall be presumed, for purposes of this subparagraph, in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both States) . . . .

12.     Accordingly, while consumers may lawfully purchase rifles and shotguns outside their state of residence, consumers may only take delivery of purchased handguns from a federal firearms licensee in the state wherein they reside.  Owing to Section 922(b)(3), a handgun consumer wishing to purchase a handgun from a dealer outside his or her home state must arrange and pay for the out-of-state dealer to ship the handgun to an in-state dealer, who would then complete the sale.

13.     Not all dealers are willing to perform interstate transfer services.  Those that do typically charge a fee for that service, as they cannot remain in business by transferring someone else's inventory to consumers, free of charge.

14.     No package delivery service in the United States ships handguns free of charge. The shipment of handguns, like that of any other item, requires the payment of a fee to cover the shipper's cost of doing business and profit.

15.     "A . . . licensed dealer shall not sell . . . any firearm to any person, other than another licensee, unless the licensee records the transaction on a firearms transaction record, Form 4473 . . . ."  27 CFR § 478.124(a).  Question 13 on Form 4473, which is directed at the consumer, asks "What is your State of residence (*if any*)? _____."

16.     Defendants instruct firearm dealers to not complete a Form 4473, to refrain from calling in a prospective firearm consumer for a required background check, and to discontinue

any retail firearms transaction, if it plainly appears that the prospective firearm consumer is not legally qualified to complete the transaction.

      *ii.*     *The Texas Regulatory Regime*

17.     Texas law does not forbid the sale of handguns to people residing outside of Texas.

      *iii.*     *The District of Columbia Regulatory Regime*

18.     The District of Columbia requires that all firearms be registered, D.C. Code § 7-2502.01(a), but does not prohibit the importation of firearms. When individuals seek to bring firearms into the District of Columbia that they had previously, lawfully purchased while residing elsewhere, they need only provide notice and seek registration within 48 hours of importation.

19.     When District of Columbia residents purchase firearms, "[a]n application for a registration certificate shall be filed (and a registration certificate issued) prior to taking possession of a firearm from a licensed dealer . . . ." D.C. Code § 7-2502.06(a). This law applies generally to rifles, shotguns, and handguns. The District of Columbia utilizes a single form, PD-219, that serves as the application to register any type of firearm, without distinction between handguns and long guns, and which serves as the registration certificate when stamped "APPROVED" and labeled with a registration number.

20.     Since federal law does not prohibit the purchase of rifles and shotguns across state lines, District of Columbia residents routinely purchase those items from federally-licensed dealers outside the District, and take delivery of such firearms directly from those dealers upon presenting them with the approved District of Columbia registration certificates for the purchased firearms.

-5-

21.     District of Columbia law specifically allows a handgun buyer to transport handguns "from the place of purchase to his or her home."  D.C. Code § 22-4505(a)(6).  A handgun buyer must "[o]btain assistance necessary to complete the [registration] application by presenting the firearm registration application to a firearms dealer licensed under federal law . . . (2) [l]ocated outside the District if the firearm is purchased outside the District."  D.C.M.R. § 24-2320.3(b)(2).  Following approval, the handgun purchaser must:

> Present the approved firearm registration application to the dealer licensed under federal law or, if federal law such as 18 U.S.C. § 922 prohibits the dealer from delivering the pistol to the applicant because the dealer is not within the District of Columbia, have that firearms dealer transport the pistol to a dealer located within the District, where the applicant will take delivery of the pistol.

D.C.M.R. § 24-2320.3(f).

*iv.     The Federal Interstate Handgun Sales Ban's Impact on Plaintiffs*

22.     The Committee's members include law-abiding, responsible Americans throughout the United States who desire to, and do, purchase handguns for traditional lawful purposes, including self-defense.  Some of the Committee's members reside in states that, like the District of Columbia, do not prohibit purchasing handguns out of state.  Some of the Committee's members also reside in states that, like the District of Columbia, require a license or pre-registration to purchase handguns.  But for the federal interstate handgun transfer ban, Committee members would purchase handguns from dealers located outside their state of residence.  The federal interstate handgun transfer ban thus frustrates these intended sales.  To the extent that Committee members do purchase handguns, the federal interstate handgun ban limits their choices as consumers, harms competition in the market, and raises prices, owing both to the fact that in-state dealers are shielded from competition by a national handgun market, and to the shipping and transfer fees that are incurred in the course of interstate handgun sales solely

as a direct result of the federal interstate handgun transfer ban.  The Committee brings this action on behalf of these members.

23.     The Committee's members include law-abiding, responsible Americans throughout the United States who desire to, and do, sell handguns for traditional lawful purposes, including self-defense.  Some of these Committee members sell handguns in states that do not forbid the sale of handguns to non-residents.  But for the federal interstate handgun transfer ban, Committee members would sell handguns directly to consumers outside the state in which they transact business.  The federal interstate handgun transfer ban thus frustrates these intended sales.  To the extent that Committee members do sell handguns with the expectation that they would be owned by consumers outside the sellers' states, the federal interstate handgun ban makes these sales less competitive, as the ban requires that handguns be shipped and then transferred through a second dealer.  The Committee brings this action on behalf of these members as well, who in turn, would assert not only their rights, but the rights of their consumers throughout the United States.

24.     Mance resides in Texas, and transacts his firearms retailing business in Texas.  He would sell handguns directly to consumers residing in other states, and in the District of Columbia, to the extent lawful under state and District law, but refrains from doing so because that conduct is prohibited by the federal interstate handgun transfer ban.

25.     Mance reasonably fears arrest, prosecution, incarceration, and fines were he to violate the law.  Accordingly, when handgun consumers residing outside Texas approach Mance about purchasing handguns from him, he declines to engage in those sales, and instead, offers only to ship the consumers' desired handguns to dealers in their states or the District of Columbia for transfer there.  Compliance with the federal interstate handgun transfer ban thus

makes Mance's handguns more expensive for these out-of-state consumers, to say nothing of the delay inherent in completing such transactions. The federal interstate handgun ban costs Mance sales, and violates his Second Amendment rights and those of his out-of-state customers. Mance brings this action on his own behalf, and on behalf of his out-of-state handgun customers, including, but by no means limited to, the Hansons.

26.     The Hansons are fully qualified under federal, District of Columbia, and Texas laws to purchase and possess handguns.

27.     On June 21, 2014, the Hansons visited Mance at his place of business in Arlington, Texas, as the Hansons were each in the market for the purchase of handguns.

28.     The Hansons each identified a handgun in Mance's inventory that is legal for them to possess in Washington, D.C., and which each would have purchased from Mance directly, and which Mance would have sold them directly, if only it were legal to do so.

29.     Because the Hansons do not reside in Texas, and do not wish to violate federal law, they would not take delivery of a handgun from Mance, nor would they bring a handgun purchased directly outside of Washington, D.C. to their home. Nor would the Hansons make any false statement on a Form 4473.

30.     Mance would not transfer any handguns to Tracey or Andrew Hanson, because doing so would violate the federal interstate handgun transfer ban.

31.     In the District of Columbia, where the Hansons reside, only one federally-licensed firearms dealer, Charles Sykes, is currently in the business of transferring handguns purchased at retail to District residents. Sykes carries no inventory himself, but charges $125 per transfer for handguns received from other dealers. Thus, the federal interstate handgun transfer ban increases the cost of handgun purchases by District of Columbia residents by $125, plus the costs

of shipping the handguns to Sykes from other dealers.

32.     Rather than violate the law, or have the handguns shipped at their expense for transfer, at their expense, through Sykes, the Hansons and Mance agreed to refrain from completing any handgun transfers unless it became legal for the Hansons to take delivery of the handguns from Mance.  They memorialized that intent by completing, in each others' presence as required by District of Columbia law, the District of Columbia's PD-219 forms.  Mance verified that the Hansons' credit card would be valid to complete the purchases, but no money, or firearms, changed hands.

33.     But for the federal interstate handgun transfer ban, the Hansons would directly purchase the handguns from Mance.

**FIRST CLAIM FOR RELIEF**
**U.S. CONST. AMEND. II – THE RIGHT TO KEEP AND BEAR ARMS**

34.     Paragraphs 1 through 33 are incorporated as though fully stated herein.

35.     The Second Amendment guarantees individuals a fundamental right to possess handguns for self-defense.

36.     Defendants' enforcement of 18 U.S.C. § 922(b)(3) and 27 CFR § 478.99, banning and otherwise burdening sale of and access to handguns, violates Plaintiffs' Second Amendment rights, (1) facially; (2) as applied in the context of handgun sales that do not violate any state or local laws; and (3) as applied in the context of handgun sales where state or local laws require a license, pre-registration, or other form of state or local governmental approval to proceed with the handgun sale.

**SECOND CLAIM FOR RELIEF**
**U.S. CONST. AMEND. V – DUE PROCESS CLAUSE (EQUAL PROTECTION)**

37.     Paragraphs 1 through 36 are incorporated as though fully stated herein.

38.     Title 18, U.S.C. § 922(b)(3) and 27 CFR § 478.99, ban the sale of handguns to otherwise qualified individuals solely on account of their residence, while allowing other equally-qualified individuals to purchase the same handguns.

39.     Defendants' enforcement of these laws violates Plaintiffs' right to equal protection of the laws guaranteed under the Fifth Amendment's Due Process Clause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.      Permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 18 U.S.C. § 922(b)(3), 27 CFR § 478.99, and any derivative provision, in such manner as to (a) forbid the sale of handguns to otherwise qualified individuals on account of their state of residence; or in the alternative, (b) from enforcing these provisions in such manner as to forbid the sale of handguns to otherwise qualified individuals where the sale would not violate any state or local law; or in the alternative, (c) from enforcing these provisions in such manner as to forbid the sale of handguns to otherwise qualified individuals who have complied with all state or local laws requiring licensing, pre-registration, or other form of pre-approval for the sale;

2.      Declaratory relief consistent with the injunction;

3.      Attorney fees and costs of suit pursuant to 28 U.S.C. § 2412;

4.      Ordinary taxable costs of suit; and

5.      Any other further relief as the Court deems just and appropriate.

Dated: July 14, 2014                              Respectfully submitted,

                                        By: */s/ William B. Mateja*
                                             William B. Mateja


Alan Gura (Va. Bar No. 68842)            William B. Mateja (Texas Bar No. 13185350)
GURA & POSSESSKY, PLLC                   FISH & RICHARDSON P.C.
105 Oronoco Street, 305                  1717 Main Street, Suite 5000
Alexandria, VA 22314                     Dallas, TX 75201
703.835.9085/Fax 703.997.7665           214.747.5070/Fax 214.747.2091
Admission *pro hac vice* pending         mateja@fr.com
alan@gurapossessky.com