IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FREDRIC RUSSELL MANCE, JR., et al., | § | Case No. 4:14-CV-00539-O |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC HOLDER, et al., | § | |
| | § | |
| Defendants. | § | |

APPENDIX IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## Contents

Declaration of Frederic Mance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 1

Declaration of Andrew Hanson. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 4

Declaration of Tracey Ambeau Hanson. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 7

Declaration of Julianne Versnel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 10

Fed. R. App. P. 28(j) Letter,
    Lane v. Holder, No. 11-1847, Dkt. 53 (4th Cir. Filed Oct. 26, 2012). . . . . . . . . . . App. 12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FREDRIC RUSSELL MANCE, JR., et al., | § | Case No. |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC HOLDER, et al., | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF FREDRIC RUSSELL MANCE, JR.

I, Fredric Russell Mance, Jr., declare:

1.      I am a citizen of the United States and a resident of Texas. I hold a Federal Firearms License ("FFL"), pursuant to which I retail handguns in Arlington, Texas.

2.      I would sell handguns directly to consumers residing in other states, and in the District of Columbia, to the extent lawful under state and District law, but I refrain from doing so because that conduct is prohibited by the federal interstate handgun transfer ban, 18 U.S.C. § 922(b)(3).

3.      I fear arrest, prosecution, incarceration, and fines were I to violate the law. Accordingly, when handgun consumers residing outside Texas approach me about purchasing handguns, I decline to engage in those sales, and instead, offer only to ship the consumers' desired handguns to dealers in their states or the District of Columbia for transfer there. Compliance with the federal interstate handgun transfer ban thus makes my handguns more expensive for these out-of-state consumers, to say nothing of the delay inherent in completing such transactions. The federal interstate handgun ban has cost me sales and continues to cost me sales.

4.      I would not transfer to a Texas resident, free of charge, a handgun arriving from an out-of-state dealer, as doing so would directly undermine my business. It is the standard practice in the firearm industry to charge for out-of-state transfers.

5.      On June 21, 2014, Andrew and Tracey Hanson visited me at my place of business in Arlington, Texas, as they are each in the market for the purchase of handguns.

6.      The Hansons each identified a handgun in my inventory that is legal for them to possess in Washington, D.C, and which each would have purchased from me directly, and which I would have sold them directly, if only it were legal to do so.

7.      Because the Hansons do not reside in Texas, and do not wish to violate federal law, they would not take delivery of a handgun from me, nor would they bring a handgun purchased directly outside of Washington, D.C. to their home. Nor would the Hansons make any false statement on a Form 4473.

8.      I would not transfer any handguns to Tracey or Andrew Hanson, because doing so would violate the federal interstate handgun transfer ban.

9.      Rather than violate the law, or have the handguns shipped at their expense for transfer, at their expense, through a District of Columbia-based federal firearms licensee, the Hansons and I agreed to refrain from completing any handgun transfers unless it became legal for the Hansons to take delivery of the handguns from me. We memorialized that intent by completing, in each other's presence as required by District of Columbia law, the District of Columbia's PD-219 forms. I verified that the Hansons' credit card would be valid to complete the purchases, but no money, or firearms, changed hands.

10.      But for the federal interstate handgun transfer ban, the Hansons, and other individuals located throughout the country, would directly purchase the handguns from me.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 10th day of July, 2014, at Arlington, Texas.

_____
Fredric Russell Mance, Jr.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FREDRIC RUSSELL MANCE, JR., et al., | § | Case No. |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC HOLDER, et al., | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF ANDREW HANSON**

I, Andrew Hanson, declare:

1.      I am a citizen of the United States and a resident of Washington, D.C.

2.      I am over the age of 21, am not under indictment, have never been convicted of a felony or misdemeanor crime of domestic violence, am not a fugitive from justice, am not an unlawful user of or addicted to any controlled substance, have never been adjudicated a mental defective or committed to a mental institution, have never been discharged from the Armed Forces under dishonorable conditions, have never renounced my citizenship, and have never been the subject of a restraining order relating to an intimate partner.

3.      I would shop for and buy handguns directly from federally-licensed dealers outside of Washington, D.C., to the extent lawful under state and District law, but I refrain from doing so because that conduct is prohibited by the federal interstate handgun transfer ban, 18 U.S.C. § 922(b)(3).

4.      I fear arrest, prosecution, incarceration, and fine were I to violate the law. Because I cannot directly access the national handgun market outside of Washington, D.C., I face higher costs in purchasing handguns. Any handgun that I would purchase outside of Washington, D.C. would

have to be shipped, at my expense, to an "in state" federal licensee, assuming the seller is even willing to effect such shipments. The receiving federal licensee would then charge me a fee to complete the transfer. This would insulate any D.C.-based firearms retailer from competition and severely limit my choice as a consumer. Indeed, there are no federally-licensed firearms retailers in Washington, D.C., and the only licensee willing to effect a transfer charges $125.

5.      Because District of Columbia law allows me to purchase handguns directly out-of-state, and there are various states that do not prohibit me, as a D.C. resident, from acquiring handguns, it is only the federal interstate handgun transfer ban that causes me to sustain shipping and transfer fees when buying handguns.

6.      On June 21, 2014, my wife Tracey and I visited Fredric Mance at his place of business in Arlington, Texas, as we are each in the market for the purchase of handguns for self-defense.

7.      I identified a handgun in Mance's inventory that is legal for me to possess in Washington, D.C., and which I would have purchased from Mance directly, and which he would have sold me directly, if only it were legal to do so.

8.      Because I do not reside in Texas, and do not wish to violate federal law, I would not take delivery of a handgun from Mance, nor would I bring a handgun purchased directly outside of Washington, D.C. to my home. Nor would I make any false statement on a Form 4473.

9.      Mance would not transfer any handgun to me, because doing so would violate the federal interstate handgun transfer ban.

10.     Rather than violate the law, or have the handguns shipped at my expense for transfer, again at my expense, through a District of Columbia-based federal firearms licensee, Mance and I agreed to refrain from completing any handgun transfers unless it became legal for me to take

2

delivery of the handgun from him. We memorialized that intent by completing, in each other's

presence as required by District of Columbia law, the District of Columbia's PD-219 form. Mance

verified that the my credit card would be valid to complete the purchase, but no money, or firearms,

changed hands.

      11.      But for the federal interstate handgun transfer ban, I would directly purchase the

handgun from Mance. I would also shop for, and purchase, handguns from other dealers outside of

Washington, D.C.

      I declare under penalty of perjury that the foregoing is true and correct.

      Executed this the 11th day of July, 2014, at Washington, D.C.

Andrew Hanson

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FREDRIC RUSSELL MANCE, JR., et al., | § | Case No. |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC HOLDER, et al., | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF TRACEY AMBEAU HANSON

I, Tracey Ambeau Hanson, declare:

1.      I am a citizen of the United States and a resident of Washington, D.C.

2.      I am over the age of 21, am not under indictment, have never been convicted of a felony or misdemeanor crime of domestic violence, am not a fugitive from justice, am not an unlawful user of or addicted to any controlled substance, have never been adjudicated a mental defective or committed to a mental institution, have never been discharged from the Armed Forces under dishonorable conditions, have never renounced my citizenship, and have never been the subject of a restraining order relating to an intimate partner.

3.      I would shop for and buy handguns directly from federally-licensed dealers outside of Washington, D.C., to the extent lawful under state and District law, but I refrain from doing so because that conduct is prohibited by the federal interstate handgun transfer ban, 18 U.S.C. § 922(b)(3).

4.      I fear arrest, prosecution, incarceration, and fine were I to violate the law. Because I cannot directly access the national handgun market outside of Washington, D.C., I face higher costs in purchasing handguns. Any handgun that I would purchase outside of Washington, D.C. would

App. 7

have to be shipped, at my expense, to an "in state" federal licensee, assuming the seller is even

willing to effect such shipments. The receiving federal licensee would then charge me a fee to

complete the transfer. This would insulate any D.C.-based firearms retailer from competition and

severely limit my choice as a consumer. Indeed, there are no federally-licensed firearms retailers in

Washington, D.C., and the only licensee willing to effect a transfer charges $125.

5.      Because District of Columbia law allows me to purchase handguns directly out-of-

state, and there are various states that do not prohibit me, as a D.C. resident, from acquiring

handguns, it is only the federal interstate handgun transfer ban that causes me to sustain shipping

and transfer fees when buying handguns.

6.      On June 21, 2014, my husband Andrew and I visited Fredric Mance at his place of

business in Arlington, Texas, as we are each in the market for the purchase of handguns for self-

defense.

7.      I identified a handgun in Mance's inventory that is legal for me to possess in

Washington, D.C., and which I would have purchased from Mance directly, and which he would

have sold me directly, if only it were legal to do so.

8.      Because I do not reside in Texas, and do not wish to violate federal law, I would not

take delivery of a handgun from Mance, nor would I bring a handgun purchased directly outside of

Washington, D.C. to my home. Nor would I make any false statement on a Form 4473.

9.      Mance would not transfer any handgun to me, because doing so would violate the

federal interstate handgun transfer ban.

10.     Rather than violate the law, or have the handguns shipped at my expense for transfer,

again at my expense, through a District of Columbia-based federal firearms licensee, Mance and I

agreed to refrain from completing any handgun transfers unless it became legal for me to take

2

delivery of the handgun from him. We memorialized that intent by completing, in each other's

presence as required by District of Columbia law, the District of Columbia's PD-219 form. Mance

verified that the my credit card would be valid to complete the purchase, but no money, or firearms,

changed hands.

11.     But for the federal interstate handgun transfer ban, I would directly purchase the

handgun from Mance. I would also shop for, and purchase, handguns from other dealers outside of

Washington, D.C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the $\underline{11}$ day of July, 2014, at Washington, D.C.

_____
Tracey Ambeau Hanson

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FREDRIC RUSSELL MANCE, JR., et al., | § | Case No. |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC HOLDER, et al., | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF JULIANNE VERSNEL

I, Julianne Versnel, declare:

1.      I am the Director of Operations of the Citizens Committee for the Right to Keep and

Bear Arms ("the Committee"). The Committee is a membership association organized under the

laws of the State of Washington, with its principal place of business in Bellevue, Washington,

dedicated to promoting the benefits of the right to bear arms. The Committee's non-profit status is

recognized under Section 501(c)(4) of the Internal Revenue Code. The Committee has

approximately 525,000 members throughout the United States, including in Texas. Fredric Mance,

Tracey Ambeau Hanson and Andrew Hanson are members of the Committee.

2.      The Committee's members include law-abiding, responsible Americans throughout

the United States who desire to, and do, purchase handguns for traditional lawful purposes,

including self-defense. Some of the Committee's members reside in states that, like the District of

Columbia, do not prohibit purchasing handguns out of state. Some of the Committee's members also

reside in states that, like the District of Columbia, require a license or pre-registration to purchase

handguns. But for the federal interstate handgun transfer ban, Committee members would purchase

handguns from dealers located outside their state of residence. The federal interstate handgun

transfer ban thus frustrates these intended sales. To the extent that Committee members do purchase

handguns, the federal interstate handgun ban limits their choices as consumers, harms competition in

the market, and raises prices, owing both to the fact that in-state dealers are shielded from

competition by a national handgun market, and to the shipping and transfer fees that are incurred in

the course of interstate handgun sales solely as a direct result of the federal interstate handgun

transfer ban. The Committee brings this action on behalf of these members.

      3.      The Committee's members include law-abiding, responsible Americans throughout

the United States who desire to, and do, sell handguns for traditional lawful purposes, including self-

defense. Some of these Committee members sell handguns in states that do not forbid the sale of

handguns to non-residents. But for the federal interstate handgun transfer ban, Committee members

would sell handguns directly to consumers outside the state in which they transact business. The

federal interstate handgun transfer ban thus frustrates these intended sales. To the extent that

Committee members do sell handguns with the expectation that they would be owned by consumers

outside the sellers' states, the federal interstate handgun ban makes these sales less competitive, as

the ban requires that handguns be shipped and then transferred through a second dealer. The

Committee brings this action on behalf of these members as well, who in turn, would assert not only

their rights, but the rights of their consumers throughout the United States.

      I declare under penalty of perjury that the foregoing is true and correct.

      Executed this the 4 day of July, 2014, at Bellevue, Washington.

_____

Julianne Versnel

2



GURA &
POSSESSKY

101 N. COLUMBUS ST., SUITE 405
ALEXANDRIA, VIRGINIA 22314
TEL 703.835.9085
FAX 703.997.7665

WWW.GURAPOSSESSKY.COM

October 26, 2012

The Hon. Patricia S. Connor, Clerk
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

      Re:    Fed. R. App. P. 28(j) Notice of Supplemental Authority
               *Lane* v. *Holder*, No. 11-1847, argued Oct. 23, 2012

Dear Ms. Connor:

Appellants cited a District Court decision upholding handgun consumers' standing to challenge the federal prohibition on handgun sales to adults aged 18-20. Appellants' Br. at 26.

Yesterday, the Fifth Circuit affirmed that decision, finding that handgun *consumers* may sue, among others, Appellee Holder for enforcing that prohibition directed at handgun *dealers*. *National Rifle Ass'n* v. *BATFE*, No. 11-10959, ___ F. 3d __, 2012 U.S. App. LEXIS 22197 (5th Cir. Oct. 25, 2012).

Notwithstanding that 18-20 year olds could receive handguns from parents, guardians, or "unlicensed, private sales," *id.* at *7,

    by prohibiting FFLs from selling handguns to 18-to-20-year-olds, the laws cause those persons a concrete, particularized injury—i.e., the injury of not being able to purchase handguns from FFLs. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 750–57, 755 n.12 (1976) (finding standing for prospective customers to challenge constitutionality of state statute prohibiting pharmacists from advertising prescription

Ms. Connor
Page Two

drug prices, despite customers' ability to obtain price quotes in another way—over the phone from some pharmacies).

*Id.* at \*13.

"This injury is fairly traceable to the challenged federal laws, and holding the laws unconstitutional would redress the injury." *Id.* at \*13 n.5 (citation omitted).

Having found the consumers to have standing, and the NRA to have associational standing on behalf of its underage consumer members, the Fifth Circuit did not need to address NRA's standing on behalf of its dealer members, who are the immediate subjects of the law. *Id.* at \*14.

The handgun consumers' standing, and that of NRA, in *NRA* v. *BATFE*, is indistinguishable from that of handgun consumers and SAF here. The individual Plaintiffs, and SAF members throughout the country, are thwarted from purchasing handguns from FFLs in all but their "state" of residence. That is plainly an injury directly traceable to the federal prohibition, and it is redressable by the District Court.

The federal government plainly inflicts an Article III injury on consumers by banning their purchase of consumer products outside their home states. The Fifth Circuit confirms this principle applies equally to handguns.

Sincerely,

/s/ Alan Gura
Alan Gura

*Counsel for Appellants*

This body of this letter contains 346 words.

cc: Counsel of Record via ECF

Certificate of Service

On October 17, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules


/s/ Alan Gura_____
Alan Gura